## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGEL SINCAVAGE,** | : | **Civil No.  1:19-CV-888** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner
of Social Security, Andrew Saul, is automatically substituted as the defendant in
place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Angel Sincavage applied for disability insurance benefits under Title II of the Social Security Act on January 11, 2016, alleging disability due to vertebrobasilar insufficiency and post-traumatic stress disorder from a car accident. (Tr. 159). However, after a consideration of the medical records and opinion evidence, which generally showed that Sincavage's physical impairments were treated with sporadic visits to specialists and minimal pain medications, and that her mental health issues were being treated with conservative outpatient therapy, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Sincavage could perform a range of light work with limitations and denied her disability application.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On January 11, 2016, Angel Sincavage applied for disability and supplemental security insurance benefits, alleging an onset date of disability beginning September 25, 2015 due to vertebrobasilar insufficiency and post-traumatic stress disorder from a car accident. (Tr. 159). Sincavage was approximately 51 years old at the time of the alleged onset of her disability and had prior employment as a high school guidance counselor. (Tr. 32). She had a college education, including a Master's degree, and could communicate in English. (Id.).

With respect to Sincavage's physical impairments, the record indicates that Sincavage's physical impairments began or were exacerbated by a motor vehicle accident in 2012. She had x-rays of the thoracic and cervical spine in September 2015, which showed multilevel mild degenerative changes in the thoracic spine and muscle spasm with degenerative changes in the cervical spine (Tr. 23-24). In October 2015, an MRI of the cervical spine showed mild spondylosis and mild canal stenosis. (Tr. 24). Sincavage was also seen for wrist pain in November 2015, and it was noted that she took pain medication for her wrist and wore a brace. (Id.)

Sincavage was seen by her primary care provider, Dr. Prahalad, throughout the alleged period of disability. (Tr. 453-62). It was noted in February of 2016 that Sincavage had difficulty walking and dizziness due to her VBI diagnosis. (Tr. 454). It was also noted that she was severely depressed and confused. (Id.) At a visit in

May 2016, it was noted that Sincavage was experience fatigue, foot pain, neck pain, and memory loss. (Tr. 456). On June 29, 2016, Dr. Prahalad's notes state that Sincavage had fallen down the stairs and was using crutches or a cane to help her walk. (Tr. 456-57). Dr. Prahalad reported that Sincavage was very depressed but denied any suicidal ideation. (Tr. 457). In August and September of 2016, Dr. Prahalad again noted Sincavage's depression and forgetfulness, as well as her foot and neck pain. (Tr. 458). In December 2016, Dr. Prahalad prescribed Pamelor for her depression. (Tr. 459).

Sincavage began treating at Total Body Chiropractic in February of 2016 for her lower back and neck pain. (Tr. 513-31). Treatment notes indicated that Sincavage received gentle manual mobilization at each visit. (Id.) In March 2016, it was noted that Sincavage was showing slight improvement since her prior visit, and that she was progressing as expected. (Tr. 519). The treatment notes stated that Sincavage's problem was likely chronic, but with improvement in her condition she could see some improvement in her activities of daily living. (Tr. 519-20). She then treated at Czulada Chiropractic in May and June of 2016 for her back and neck pain. (Tr. 496-97). She received spinal mobilization treatment and home-based therapeutic exercises. (Tr. 496).

In April 2016, Sincavage was examined by Dr. Jay Willner, a state agency consultant, regarding her physical impairments. (Tr. 438). Dr Willner diagnosed her

with vertebral basilar insufficiency, neck pain, left hip pain, vertigo, and syncope, and her prognosis was fair. (Tr. 440-41). He noted that Sincavage's neck and hip pain was largely a result of a motor vehicle accident she was involved in a few years prior, and that she occasionally had difficulty walking. (Tr. 438). Dr. Willner reported that the plaintiff was taking Valium at that time, and that she could perform all of her activities of daily living with some help or supervision. (Tr. 439). He opined that Sincavage could lift up to 20 pounds frequently and carry up to 10 pounds frequently; she could never climb stairs, ramps, ladders, scaffolds or balance, and occasionally stoop, kneel, crouch and crawl; and that she could perform activities like shopping, personal hygiene, use public transportation, and could ambulate without an assistive device. (Tr. 442-47).

Sincavage continued to treat with Dr. Prahalad in 2017. Dr. Prahalad noted that Sincavage was depressed and had neck pain, nausea, and left-hand weakness. (Tr. 605). Dr. Prahalad suggested that the plaintiff needed surgery on her left hand. (Id.) In October 2017, Dr. Prahalad noted that Sincavage was experiencing severe neck spasms, vertigo, memory loss, and poor concentration. (Tr. 604).

As for her mental impairments, Sincavage was examined by Dr. Elaine Everding, a state agency consultant, who performed a psychiatric examination on March 7, 2016. (Tr. 427). Sincavage reported to Dr. Everding that she was depressed "most of the time," she suffered from crying spells, fatigue, getting anxious, and

having panic attacks. (Tr. 428). A mental status examination revealed that Sincavage was fluid in her speech, her thought process was coherent and goal-directed, she was somewhat anxious, and she had some difficulty with attention and concentration. (Tr. 429). Dr. Everding recommended individual psychological therapy and a psychiatric evaluation or follow up. (Tr. 431).

In April 2017, Sincavage began treating at Valley Counseling Associates for her depression and anxiety. (Tr. 463-84, 606-12). On her intake form, she noted a history of depression, memory problems, feelings of hopelessness and worthlessness, anxiety, and excessive crying. (Tr. 464-66). A mental status examination performed by Karen Hartt, MSW, indicated a normal grooming appearance, cooperative attitude, depressed mood but appropriate affect, normal speech and intact thought content, good judgment and good insight. (Tr. 468). The plaintiff began bi-weekly counseling sessions, where it was noted that much of her stress and anxiety stemmed from her family problems as well as her chronic pain. (Tr. 463-84). The therapy notes indicate that Sincavage's treatment plan including coping mechanisms, exercising, and maintaining a routine to cope with her depression and anxiety. (Id.) A psychological Services Consultation by Dr. Lenora Herrmann-Finn on May 2, 2017 diagnosed Sincavage with persistent depressive disorder but noted that she had no elevated levels of anxiety or depression. (Tr. 469).

It is against this clinical backdrop that a hearing was held on this disability application on December 14, 2017, where Sincavage appeared and testified, along with her husband, and a Vocational Expert. (Tr. 89-141). Following this hearing, the ALJ issued a decision denying this application for benefits, finding that Sincavage remained capable of performing a range of light work jobs in the national economy in the representative occupations of a night cleaner, garment sorter, and assembler of small parts. (Tr. 33).

In that decision, the ALJ first concluded the Sincavage had met the insured status requirements of the Social Security Act from the date of her onset of disability through March 31, 2021 and had not engaged in any substantial gainful activity since her alleged onset date of disability on September 25, 2015. (Tr. 15). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Sincavage suffered from the following severe impairments: cervical spondylosis with shallow disc bulging and mild foraminal stenosis, thoracic spine degenerative changes, scoliosis, osteoarthritis of the left wrist, right foot hallux rigidus and degenerative joint disease of the first MP joint, depression, and vertebrobasilar insufficiency. (Id.)

At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 16). As it relates to the instant appeal, the ALJ considered the plaintiff's mental impairments under listing 12.04. (Tr. 17). On this score, the ALJ found that the plaintiff had not satisfied

either the "paragraph B" or "paragraph C" criteria, and thus did not meet the requirements of listing 12.04. (Tr. 17-21). Specifically, the ALJ found that Sincavage had only a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (Tr. 17-19). Accordingly, because the record did not establish that Sincavage had at least two "marked" limitations or one "extreme" limitation in those areas, the ALJ concluded that the paragraph B criteria had not been met. In addition, the ALJ found that the evidence failed to establish the presence of paragraph C criteria based on the plaintiff's conservative mental health treatment and the fact that the evidence did not establish that Sincavage had a minimal capacity to adapt to changes. (Tr. 20).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Sincavage's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(b) except the claimant can climb ramps and stairs occasionally; never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel and crouch; and never crawl. She can frequently work at unprotected heights and with moving mechanical parts but never operate a motor vehicle. She can have frequent[] exposure to humidity, wetness, extreme cold and vibration. The claimant is limited to simple, routine tasks and simple, work-related decisions. The claimant's time off task can be accommodated by normal breaks.

(Tr. 21).

In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case. (Tr. 21-32). The ALJ first examined the plaintiff's medical records, both prior to and during the alleged onset period of disability. (Tr. 22-28). The ALJ noted that these records showed that Sincavage had chronic back and neck pain that Sincavage had been treating for some time with a chiropractor; that she had vertigo and dizziness due to her VBI diagnosis; and that she at times took medication, such as Valium and Pamelor, but that she generally chose to treat without medication due to her religious beliefs. (Id.) Sincavage was seen by a neurologist in September 2016, who noted that there was no significant memory deficit and advised her to be physically active and use warm showers for her neck problems. (Tr. 26). It was noted that Sincavage was treating with her primary care provider, a chiropractor, and a podiatrist in late 2016, but she reported to her primary care provider in December that she had taken a trip to the Dominican Republic and she was feeling better. (Id.) While Sincavage's records showed that she experienced depression and anxiety, she did not begin treating for her mental health issues until mid-2017. (Id.) The ALJ found that the record did not support Sincavage's limitations to the extent she alleged. On this score, the ALJ noted that Sincavage generally had conservative treatment for her chronic pain and that she chose not to take medication. (Tr. 27-28). Additionally, he noted the fact that Sincavage did not

begin treating her depression until April 2017, but that he took into consideration her noted cognitive deficits and depression in his RFC assessment. (Id.)

As for the opinion evidence, the ALJ gave partial weight to Dr. Vizza, a state agency consultant, who opined that Sincavage was moderately limited in activities of daily living, social functioning, and maintaining concentration, persistence and pace. (Tr. 29). The ALJ found that Sincavage was more limited than Dr. Vizza had opined given her recent treatment at Valley Counseling. (Id.) He also found that Sincavage was not as limited in activities of daily living and social functioning based on counseling notes that indicated Sincavage had made new friends and took trips out of the country and to the beach. (Id.)

The ALJ also gave partial weight to the opinion of Dr. Hutz, a state agency consultant who reviewed the record and found that Sincavage could perform light work with some limitations. (Id.) Dr. Hutz found that the plaintiff could perform light work with occasional climbing of ramps and stairs but no climbing of ropes, ladders or scaffolds; that she could occasionally balance, stoop, kneel, crouch and crawl, but that she needed to avoid concentrated exposure to hazards and extreme cold and wetness. (Id.) The ALJ found that Sincavage was not as limited as Dr. Hutz opined due to her history of conservative treatment and the fact that she did not take medications for her pain. (Id.) The ALJ also noted that Sincavage did not follow up

on her providers' recommendations for surgeries for her left thumb and right foot. (Id.)

As for the opinion of Dr. Prahalad, the plaintiff's primary care provider, the ALJ gave this opinion partial to little weight. (Tr. 29-30). Dr. Prahalad treated Sincavage since 2003 and throughout the alleged period of disability. Dr. Prahalad's treatment notes indicated that Sincavage had constant vertigo, nausea, neck spasms, and memory loss. (Id.) Her notes showed that Sincavage had chronic back and neck pain, an injury to her thumb and foot, as well as poor focus, depth perception, nausea, and cognitive deficits due to her VBI diagnosis. (Id.) Dr. Prahalad also noted that Sincavage had an inappropriate mood, poor short-term memory, indecision, and was reliant on others for many daily tasks. (Id.) The ALJ gave this opinion partial to little weight because he found that the treatment notes were largely based on Sincavage's subjective complaints, and that her history of conservative treatment did not support the limitations alleged by Dr. Prahalad. (Id.)

The ALJ also gave partial weight to the opinion of Dr. Everding, the state agency consultant who performed a mental status examination on Sincavage. (Tr. 31). Dr. Everding opined that Sincavage had a moderate limitation in the ability to make judgments on complex, work-related decisions and in interacting appropriately with the public, supervisors, and coworkers. (Id.) She also opined that the plaintiff had a marked limitation in the ability to respond appropriately to changes in the work

setting. (Id.) The ALJ found that Dr. Everding's opinion was not supported by her own mental exam findings, in that Dr. Everding found the plaintiff to be adequately dressed and well-groomed; had fluent speech and coherent and goal-directed thought process; her recent memory skills were generally intact; and she had average intellectual functioning. ((Id.) Additionally, the ALJ noted that Dr. Everding's opinion was inconsistent with the fact that the plaintiff did not begin treating with a counselor in 2017, and at that time, it was noted that Sincavage had made progress, engaged more socially, and took trips out of the country and to the beach. (Id.)

Similarly, the ALJ gave only partial weight to Dr. Willner, who performed a consultative physical exam for the state agency in 2016. (Tr. 31). Dr. Willner opined that Sincavage could lift up to 50 pounds occasionally and 20 pounds frequently and carry up to 20 pounds occasionally and 10 pounds frequently; she could frequently handle, reach, finger, feel, push/pull, and operate foot controls; could never climb stairs, ramps, ladders, or scaffolds and occasionally stoop, kneel, crouch and crawl. (Id.) The ALJ gave this opinion partial weight based on the claimant's history of conservative treatment. (Id.) He noted that Sincavage generally treated with her primary care provider, and that the neurologist that Sincavage saw in 2016 noted minimal findings on exam. (Id.) In addition, the ALJ noted that Sincavage never followed up on her providers' recommendations for thumb and foot surgeries. (Id.)

Finally, the ALJ gave partial weight to Sincavage's therapist, Karen Hartt. (Tr. 32). Ms. Hartt opined that Sincavage suffered from persistent depression, in part due to her physical pain and lack of independence. (Id.) The ALJ found that Ms. Hartt's opinion lacked probative value because she did not give functional limitations, and her own treatment records did not note more than moderate issues on exam. (Id.) Additionally, Sincavage's counseling notes from indicated that she was making progress in that she was taking trips and making new friends. (Id.)

The ALJ also considered Sincavage's statements and those of her husband and found that the record did not support the claimant's limitations to the extent alleged. The ALJ gave partial weight to the statements of Sincavage's husband, as he noted they were valuable in assessing the severity of Sincavage's impairments, but that they were given by a party sympathetic to the claimant and offered little probative value in determining Sincavage's RFC. (Tr. 29). As for Sincavage's subjective complaints, the ALJ found that her statements were not consistent with her overall treatment records. (Id.) The ALJ noted that Sincavage's record indicated minimal, conservative, and sporadic treatment, and that she did not consistently take medication. (Tr. 22). He noted that she mainly treated with her primary care provider and only sporadically treated with specialists, and that she had no hospitalizations or surgeries related to her pain, although her providers had recommended surgery on occasion. (Id.)

Having arrived at this RFC assessment based upon an evaluation of these clinical records, medical opinions, and the claimant's statements, the ALJ found at Step 4 that Sincavage could not perform her past work. (Tr. 32). However, at Step 5, the ALJ found that there were a number of light work jobs in the national economy that she could perform, such as a night cleaner, garment sorter, and assembler of small parts. (Tr. 33). Accordingly, the ALJ concluded that Sincavage did not meet the stringent standard for disability set by the Social Security Act and denied her disability claim.  (Id.)

This appeal followed. (Doc. 1). On appeal, Sincavage contends the ALJ erred in finding that Sincavage did not meet a listing at Step 3 with respect to her mental impairments. Additionally, she contends that the ALJ failed to give proper weight to Sincavage's treating physician and in his evaluation of the opinion evidence. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the

record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

19

assessment from a physician regarding the functional abilities of the claimant."

Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.

Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any

credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D.

Pa. 2015).

These seemingly discordant legal propositions can be reconciled by

evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in

the factual setting where a well-supported medical source has opined regarding

limitations which would support a disability claim, but an ALJ has rejected the

medical opinion which supported a disability determination based upon a lay

assessment of other evidence. In this setting, these cases simply restate the

commonplace idea that medical opinions are entitled to careful consideration when

making a disability determination, particularly when those opinions support a

finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant

could perform that are consistent with the claimant's age, education, work experience and RFC.   20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).   Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.   Id. at 706-707.   In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."   Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]

symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it
> is supported by competent medical evidence. Dobrowolsky v. Califano,
> 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc.
> Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a
> claimant's subjective testimony that is not found credible so long as
> there is an explanation for the rejection of the testimony. Social
> Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social
> Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that
> there is an underlying medically determinable physical or mental
> impairment that could reasonably be expected to produce the
> individual's pain or other symptoms, however, the severity of which is
> not substantiated by objective medical evidence, the ALJ must make a
> finding on the credibility of the individual's statements based on a
> consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective

reports of pain under a standard of review which is deferential with respect to the

ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ

so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social

Security Rulings and Regulations provide a framework under which the severity of

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529,

416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is

not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363

(3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or

other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." <u>Hantraft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. <u>Id.</u> The Social Security Administration

has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### D.   The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Sincavage was not entirely disabled.

As we have noted, Sincavage first challenges the ALJ's finding at Step 3 that she did not meet a listing and thus was not *per se* disabled at Step 3. The crux of this argument is Sincavage's assertion that the ALJ should have given controlling weight to the opinion of her primary care provider, Dr. Prahalad.

This argument warrants inly brief consideration. As we have previously noted when addressing similar Step 3 claims in cases involving emotional impairments:

> At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 119 (3d Cir. 2000). In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and caselaw. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

This particular case involves the Listings pertaining to mental impairments. The mental impairment listings, in large part, consist of a definitional statement describing the disorder(s) addressed by the listing (Paragraph A), and a set of impairment-related functional limitations that must be met to establish the requisite severity (Paragraph B). 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00A. Listings 12.02, 12.03, 12.04, and 12.06 also include a second set of impairment-related functional limitations (Paragraph C) that is only considered if the paragraph B criteria are not satisfied. Id. [ … ]

The Paragraph B criteria of Listings 12.02, 12.03, 12.04, 12.06, and 12.08 are identical, and require the ALJ to assess the degree of a claimant's limitation in four broad functional areas: activities of daily living; social functioning; maintaining concentration, persistence or pace; and whether the claimant has experienced repeated episodes of decompensation of extended duration. The first three areas are assessed on the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth area, episodes of decompensation of extended duration, is rated on the following four-point scale: none, one or two, three, four or more. Id. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful work. Id. The Paragraph B criteria are met where an impairment results in two of the following: a marked restriction of activities of daily living; marked difficulties in

maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.02, 12.03, 12.04, 12.06, 12.08.

Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8 (M.D. Pa. Sept. 30, 2015). If the Paragraph B criteria have not been met, the ALJ must then assess the Paragraph C criteria, which requires that the claimant have a mental disorder that is " 'serious and persistent'; there must be a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. pt. 404, subpt. P., app. 1 §§ 12.02, 12.04. In order to conclude that a claimant meets either of these listings, the ALJ must find that the disorder satisfies both the A and B criteria or the A and C criteria. Id.

In the instant case, we conclude that the ALJ's finding that Sincavage's depressive disorder did not meet a listing is supported by substantial evidence. On this score, the ALJ considered both the paragraph B and paragraph C criteria and found that the plaintiff's mental impairment did not meet either. The ALJ devoted almost five pages of his opinion to an explanation of why the plaintiff did not meet a listing. As to the paragraph B criteria, the ALJ found that Sincavage had a mild limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (Tr. 17-20). The ALJ's findings were based on a combination of the claimant's treatment

records, the medical opinions, and the claimant's subjective statements, and the ALJ found that given her generally conservative treatment and her progress with counseling in 2017, the paragraph B criteria were not met. (Id.)  In addition, the ALJ explained that the paragraph C criteria had not been met because the record did not show a "serious and persistent" disorder, as Sincavage had very minimal mental health treatment until she began counseling in 2017. (Tr. 20).

The plaintiff contends that Dr. Prahalad's opinion supports a finding that the plaintiff's depressive disorder meets both the paragraph B and C criteria, and thus, the ALJ should have found that the plaintiff was *per se* disabled at Step 3. However, the ALJ gave Dr. Prahalad's opinion partial to little weight and explained that Dr. Prahalad's opinion was largely based on the plaintiff's subjective complaints. In addition, the ALJ credited opinions from other medical providers and reviewed the claimant's complete treatment record and concluded that the plaintiff was not *per se* disabled at Step 3. It is entirely the province of the ALJ to weigh competing medical opinions and afford them different weight so long as the ALJ gives an adequate explanation. Morales, 225 F.3d at 317. Accordingly, we find that these arguments are wholly without merit and do not entitle Sincavage to a remand.

Sincavage also argues that the ALJ erred in finding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence. Sincavage contends that the ALJ did not properly

consider her testimony and her subjective statements concerning her mental and physical impairments. However, to the contrary, the ALJ discussed Sincavage's subjective complaints and determined that they were inconsistent with the medical evidence. Sincavage stated that her hip, neck, hand and foot pain affected her daily and precluded her from working. She reported that she did not take medication due to her religious beliefs. She also stated that she had trouble walking, lifting things, and holding and gripping items, and that she constantly had dizziness and nausea. She further asserted that she had problems concentrating and remembering things.

On this score, the ALJ took these statements into account to the extent they were consistent with the medical record. Thus, the RFC limited Sincavage to simple, routine tasks and simple, work-related decisions, with time off task to be accommodated by normal breaks. Moreover, the RFC accounted for Sincavage's physical limitations by limiting her to only occasional climbing of ramps and stairs, never climbing ropes, ladders or scaffolds; occasional balancing, stooping, kneeling and crouching but never crawling. However, the ALJ found that the claimant's medical records indicated that she was not as limited as she had alleged, given her history of conservative treatment, the fact that she generally refused medication but did take medication on occasion, and the fact that she was progressing her in counseling in 2017. Accordingly, we cannot conclude that the ALJ erred in the

respect, as he took into account the claimant's subjective complaints but ultimately found that they were inconsistent with the record evidence.

In this case, the ALJ was required to examine the medical evidence of record, coupled with Sincavage's subjective complaints regarding her impairments, and was tasked with determining what range of work Sincavage could perform, if any. Given Sincavage's conservative treatment for her pain and her mental health impairments, and the fact that her pain and depression was being managed during the relevant time period, the ALJ found that Sincavage could perform less than a full range of light work. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence; that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Biestek, 139 S. Ct. at 1154, supported these determinations.

We further find that the ALJ's evaluation of the lay testimony complied with the requirements prescribed by the Commissioner's regulations and the law. At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's

findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.    **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Submitted this 29th day of May, 2020